ALFRED H. LYON, as Surviving Executor, etc., of ADDISON J. LYON, Deceased, Respondent, v. CITY OF BINGHAMTON, Appellant.

Third Department, March 8, 1939.

*Mangan & Mangan* [*Frank J. Mangan* of counsel], for the respondent.

*Herman F. Nehlsen, Corporation Counsel* [*Jack W. Hummer, Assistant Corporation Counsel,* and *Samuel H. Pearis* of counsel], for the appellant.

HILL, P. J.    Defendant city appeals from a judgment of $155,001, besides costs and disbursements.    The items of the damage are described:

(1) $8,000, " damages sustained by reason of the wrongful and unlawful acts of the defendant, its agents, officers and employees in diverting water of the Susquehanna river, causing a washing away or erosion of the plaintiff's lands."

(2) $42,000, " the amount of the plaintiff's share or interest in and to the usable value of the Rockbottom Dam, the land upon which it stands, its appurtenances, pondage, and all rights thereunto belonging and all of which have been used and occupied by the defendant for a period of six years prior to the commencement of this action and down to the time of this trial."

(3) $105,000, " the fair and reasonable market value of the plaintiff's share or interest in and to the Rockbottom Dam, the land upon which it stands, its appurtenances, pondage and all rights thereunto belonging."

(4) $1, " nominal damages sustained by reason of the wrongful diversion of water from the Susquehanna River above the Rockbottom Dam and property of plaintiff for water supply purposes of defendant from July 28, 1928, down to the time of this trial."

Plaintiff, his grantors and devisors, for more than one hundred years have owned the Rockbottom dam in the Susquehanna river, together with the mill and water power rights incidental thereto, also riparian rights appurtenant to lands adjacent to the river and the pool or pond formed by the water impounded by the dam.    As early as 1867 the city purchased riparian lands bordering on the river some distance above the dam and began to pump water from the pond formed by the dam into the mains for the use of the city and its residents.    Since about 1887 the city has taken water from the pond through a thirty-inch pipe, and since 1899 also through a thirty-six-inch pipe.    The facilities now operated by the city permit the taking of more than 20,000,000 gallons of water daily from the pond.    Continuing demands since 1895 have been made by plaintiff and his predecessors in title that the city discontinue

3

plaintiff and his coexecutors against the city in 1910 wherein a
judgment for injunctive relief against the diversion of the water
and for incidental damages was sought. The suit was tried in
1916 and decided in 1922. The judgment granted the prayer for
injunctive relief and nominal damages. A motion to vacate the
judgment was thereafter denied at Special Term, and the denial
affirmed by this court (224 App. Div. 568). The judgment was
modified and affirmed by this court (228 App. Div. 585). The
opinion states: " The injunctive relief granted by the judgment
below should be suspended until such time as substantial damage
shall be suffered by the plaintiffs or shall be impending. [Citations.]
The judgment for nominal damages preserves the title of the plain-
tiffs and prevents the defendant from obtaining any prescriptive
right to divert the waters, and that part of the judgment should
be affirmed. That part of the judgment granting an injunction
should be modified by suspending its present operation and pro-
viding that the plaintiffs may at any time apply at the foot of the
judgment, upon showing substantial injury from any cause to them
hereafter occurring, for a judgment substantially as provided in
the present judgment, or as the court may direct, or at their elec-
tion the plaintiffs may bring such separate action for such or other
relief as they may be advised on account of any injury to their
property hereafter occurring, and as so modified the judgment
appealed from should be affirmed."

This action was commenced in July, 1934. The complaint, *inter
alia*, plead the facts earlier stated, including the judgment and that
it was *res judicata*. Also that plaintiff had been physically ejected
from his own property by the mayor of defendant aided by several
armed policemen and by like armed force had been prevented from
retaking possession; that the city had built structures upon the
plaintiff's property which prevented the water from flowing through
the raceway and is maintaining the structures by force. The city
by its answer pleaded general and qualified denials and also again
sought to raise the issue that the city had gained a prescriptive
right to the use of the water from the pond and an easement which
required plaintiff, or upon his failure permitted the city, to repair
and reconstruct the dam in a manner which would maintain the river
at the level of the top of the dam. The decision was in plaintiff's
favor upon all of the issues, and damages were fixed therein as
earlier recited. Alternative relief in part as follows is granted by
the judgment: " That unless the defendant within six months from
the entry of this judgment and decree herein and service of notice
of entry thereof upon defendant's attorney or attorneys tenders

or pays to the plaintiff the sum of One Hundred Fifty-five Thousand and One Dollar ($155,001.00), hereby fixed as past and permanent damages, and unless plaintiff shall refuse upon such tender to him of the said sum of $155,001.00 to execute a deed of conveyance to defendant of his share or interest in and to the Rockbottom Dam, the land upon which it stands, riparian rights, pondage and appurtenances thereunto belonging, together with an adequate and sufficient right of way from South Street, in the City of Binghamton, to the northerly abutment of said dam, free from all liens, taxes and incumbrances, and execute and deliver to the defendant a general release of all past and permanent damages, that the defendant shall be perpetually enjoined as follows:" from taking or interfering with the waters of the Susquehanna river at the points above the plaintiff's property, from maintaining the appurtenances by which the city effects its diversion of the waters, from repairing the dam temporarily or permanently and from interfering with the exercise of the plaintiff of his right of ownership in the dam and adjacent real property. The earlier judgment determined that plaintiff owned the dam, pool, pondage rights, etc., and that the city had gained neither a prescriptive right to take water nor an easement to have the water maintained at the height of the crest of the dam which either would obligate plaintiff to keep the dam in repair or permit the city to do so upon his failure. That decision was final as between the parties as to the issues there litigated. (*Sears, Roebuck & Co.* v. *9 Avenue-31 Street Corp.*, 274 N. Y. 388, 400.)

Under quite similar conditions, but lacking the accentuating features of forcible removal of plaintiff from his own property, and the detention thereof and the erection of structures thereon to the damage of plaintiff's upland, a recovery has been permitted for " inverse condemnation " in a recent case in the Court of Appeals in which the judgment was modified by remitting the cause to the Special Term for the fixing of all damages suffered by plaintiff with the direction, " when such damages have been determined a judgment may be entered providing that an injunction should issue against the village unless within a reasonable time, to be fixed by Special Term, the defendant should pay or tender to the plaintiff the amount of damages so fixed by the court." (*Ferguson* v. *Village of Hamburg*, 272 N. Y. 234, 241.) Defendant asks a reversal because of plaintiff's failure to present a verified claim of the damages to its common council and to serve a notice of intention to commence an action upon the corporation counsel under the provisions of section 244 of the Second Class Cities law. This action was brought pursuant to and " at the foot of " the judgment

in the earlier action. (*Lyon* v. *Water Commissioners of Binghamton*, 228 App. Div. 585.) The city had notice of the acts of its agents and officials in diverting water to plaintiff's damage and of the seizure of his property to be used in a proprietary business conducted by the city. The statutory requirement as to the verified claim and notice does not apply. (*Root* v. *City of Saratoga Springs*, 218 App. Div. 237; *Jones* v. *City of Binghamton*, 198 id. 183; *Twist* v. *City of Rochester*, 37 id. 317.) " It [the language of the section] thus seems to limit the actions to be brought under the provisions of the statute to those which are limited to torts for damages for injuries to person or property, or invasion of personal or property rights through the omission of duty, wrongful act, fault, neglect, misfeasance or negligence of the officers and employees of the city and does not include actions brought upon contract." (*Marcy* v. *City of Syracuse*, 199 App. Div. 246, 253; motion for leave to appeal to the Court of Appeals denied, 200 id. 886; motion for leave to appeal to the Court of Appeals denied by that court on March 7, 1922, unreported.) The earlier judgment fixed the rights of the parties and gave to this plaintiff a right to recover the amount of any damages sustained. That judgment established juristic contractual relations. Even in a tort action a notice is unnecessary when the condition was created by the officers, employees or agents of the defendant city. (*Taylor* v. *City of Albany*, 239 App. Div. 217; affd., 264 N. Y. 539.) The evidence sustains the amount of damages awarded.

The judgment should be affirmed, with costs.

McNamee, Crapser, Bliss and Heffernan, JJ., concur.

Judgment affirmed, with costs.